# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

TANYA W.,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

CASE NO. 2:18-cv-173-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in finding Plaintiff's mental impairments did not constitute a medically determinable severe impairment at Step Two. In making this determination, the ALJ improperly evaluated the opinions of examining physicians, Kathleen Andersen, M.D. and Erica Brandling-Bennett, Ph.D., which referenced Plaintiff's mental impairments and functional limitations.

Had the ALJ properly considered the opinions of Drs. Andersen and Brandling-Bennett and Plaintiff's mental impairments at Step Two, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner of Social Security for Operations ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

In November 2014, Plaintiff filed applications for DIB and SSI alleging disability as of September 3, 2014. *See* Dkt. 8, Administrative Record ("AR") 216-226. The applications were denied upon initial administrative review and on reconsideration. *See* AR 58-119. A hearing was held before ALJ Wayne Araki on January 26, 2017. *See* AR 28-57. In a decision dated April 22, 2017, the ALJ determined Plaintiff to be not disabled. *See* AR 14-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481.

On July 25, 2018, the Court ordered the parties to submit supplemental briefing on whether previously absent evidence from the administrative record should be considered under sentence six of 42 U.S.C. § 405(g). Dkt. 13. The parties submitted supplemental briefing, Dkts. 14, 16, and Defendant supplemented the record to include the new evidence, Dkt. 15. Because the administrative record now includes the new evidence, the Court concludes sentence six does not apply, and the Court will consider the new evidence as a part of the administrative record pursuant to sentence four of 42 U.S.C. § 405(g). *See Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the

administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

In Plaintiff's Opening Brief, Plaintiff maintains (1) the ALJ erred by finding Plaintiff's mental impairments did not constitute severe impairments at Step Two and by failing to properly evaluate the opinions of Drs. Andersen and Brandling-Bennett; (2) the ALJ erred by failing to properly evaluate the medical evidence of treating physician, Dr. Andrew Brockenbrough, M.D.; and (3) the evidence submitted to the Appeals Council shows the ALJ's decision was not supported by substantial evidence. Dkt. 10 at 1. Plaintiff argues this case should be remanded for further administrative proceedings. Dkt. 10 at 16.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I. Whether the ALJ erred by finding Plaintiff's mental impairments did not constitute severe impairments at Step Two and by failing to properly consider the opinions of Drs. Andersen and Brandling-Bennett.**

Plaintiff asserts the ALJ erred in failing to find her mental impairments severe impairments at Step Two and by failing to properly consider the opinions of examining physicians, Drs. Andersen and Brandling-Bennett. Dkt. 10 at 3-8.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. §140.1521(b)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

The Step Two inquiry is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); *see also Smolen*, 80 F.3d at 1290 (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

At Step Two, the ALJ noted Plaintiff has been diagnosed with schizoaffective disorder and significant neurocognitive impairments, but determined the impairments not severe. AR 16-17. In making this conclusion, the ALJ gave little weight to the medical opinions of examining physicians, Kathleen Andersen, M.D. and Erica Brandling-Bennett, Ph.D., which referenced Plaintiff's mental impairments and functional limitations. AR 17.

In May 2015, Dr. Andersen diagnosed Plaintiff with schizoaffective disorder, depressed type and opined Plaintiff was unable to maintain employment. AR 507. Specifically, Dr. Andersen opined:

> I cannot picture her successfully maintaining employment. Her thoughts are focused on the harassment she believes she is experiencing. She says that she cannot think normally, communicate normally. Ability to focus on tasks at hand in a job setting would be markedly to severely impaired. Related to psychotic thought processes, she would have markedly impaired ability to interact consistently with others in the workplace. She would mostly be uncommunicative. If, however, she were forced to communicate on a more prolonged basis with others, eventually, her paranoid delusional thinking would come out. Judgment is severely impaired. The only hope would be for her to involve herself in mental health treatment which would need to involve prescription of antipsychotic, antidepressant medication. Potentially, these could be significantly helpful for her. Hopefully, the providers who are treating her can continue to work with her to consider mental health treatment. Her prognosis is guarded. She does appear to be capable of managing her own funds to meet her basic daily needs.

AR 507.

In March 2017, Dr. Brandling-Bennett diagnosed Plaintiff as severely depressed and found significant neurocognitive impairments. AR 660-61. Dr. Brandling-Bennett found Plaintiff's memory is impaired, in large part because she is unable to learn new information and has mild loss of information over delay periods. AR 660. She found Plaintiff's cognitive weaknesses "reflect significant weaknesses in frontally-mediated functioning that subserves rapid processing of information and most aspects of timed executive functioning." AR 660. Dr. Brandling-Bennett opined Plaintiff's "neurocognitive impairments are disabling for her[,]" and these impairments "will make it almost impossible for her to find and keep gainful employment." AR 660. Dr. Brandling-Bennett also opined Plaintiff's neurocognitive impairments were "significant enough that there are concerns about her ability to continue living completely independently; she would benefit from hav[ing] some level of social work or caregiver support, at least on a part-time basis." AR 660.

The ALJ assigned little weight to the opinions of Drs. Andersen and Brandling-Bennett, finding the opinions were inconsistent with: (1) Plaintiff's lack of mental health treatment; (2) the objective evidence; (3) Plaintiff's testimony; and (4) Plaintiff's work history. AR 17.[1]

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. <u>Plaintiff's mental health treatment</u>

First, the ALJ found the opinions of Drs. Andersen and Brandling-Bennett were inconsistent with Plaintiff's lack of mental health treatment. AR 17. The ALJ noted Plaintiff was tearful or overwhelmed at times, but was not interested in medication management or counseling. AR 17 (citing AR 391, 552).

An ALJ may properly reject an examining physician's opinion on this basis. *See King v. Comm'r of SSA*, 475 F. App'x 209, 210 (9th Cir. 2012) (holding an ALJ's rejection of an

---

[1] The Court notes it is not entirely clear from the ALJ's decision if he provided separate reasons for rejecting the opinions of Drs. Andersen and Brandling-Bennett. AR 17. However, because the parties agree the ALJ provided the same reasons for rejecting the opinions of Drs. Andersen and Brandling-Bennett, the Court will consider those reasons with respect to the opinions of both Dr. Andersen and Dr. Brandling-Bennett.

examining physician's opinion because of "the absence of mental health treatment records" was a clear and convincing reason). However, the Ninth Circuit has recognized "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" on which to conclude a physician's assessment is inaccurate. *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting individuals with depression often do not recognize their condition reflects serious mental illness). *See also Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) (holding invalid ALJ's rejection of claimant's assertions concerning depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation)). "When mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not realize even that his 'condition reflects a potentially serious mental illness.' " *Garcia v. Astrue,* 2011 WL 884126, at *18 (W.D. Wash. Feb. 15, 2011) (quoting *Van Ngyuen,* 100 F.3d at 1465)).

Plaintiff argues she "has been found to suffer from a schizoaffective disorder with symptoms of paranoia and delusions and lacks insight into her mental conditions. It was error for the ALJ to rely on her self-assessment and lack of mental health treatment to reject the opinions of two evaluating mental health specialists." Dkt. 10 at 5. Defendant argues Plaintiff has not identified any evidence linking her alleged impairment to her failure to seek treatment. Dkt. 11 at 2.

Here, the record reflects Dr. Andersen found Plaintiff suffered from schizoaffective disorder with paranoia and delusion. AR 507. Plaintiff reported she is being watched and taped,

and she does not speak with others about her paranoid delusional thoughts because "they will think she is crazy, whereas she knows that these things are really happening." AR 507. Dr. Andersen opined Plaintiff's "insight in to [sic] her mental health problems is nonexistent." AR 507. In 2017, Plaintiff started seeing a therapist, and during her evaluation with Dr. Brandling-Bennett, she endorsed feeling sad, helpless, hopeless, and overwhelmed, as well as significant anxiety. AR 659-660. Although Defendant points to one citation in the record wherein Plaintiff reported she had gone to counseling in the past, and did not want to try it again, and she became agitated when one of her providers tried to discuss her depression symptoms, AR 391, this does not necessarily indicate Plaintiff's failure to seek treatment was attributable to her own personal preference rather than her mental impairment. Instead, viewing the record as a whole, the evidence reflects Plaintiff's aversion to counseling and discussing her mental illness may speak more to the extent of her underlying mental illness rather than Plaintiff failing to seek treatment.

In addition, the ALJ failed to discuss evidence related to the side of effects of Plaintiff's anti-depressant medication. In the same treatment note referenced by ALJ, Plaintiff reported she did not want to take anti-depressants because they made her tired. *See* AR 391. According to Social Security Ruling, (hereinafter "SSR"), SSR 16-3p, 2016 SSR LEXIS 4 at *24, an "individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms; [or] an individual may not be able to afford treatment and may not have access to free or low-cost medical services." *See also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999).

Accordingly, the Court concludes Plaintiff's failure to seek mental health treatment is not a specific and legitimate reason supported by substantial evidence for rejecting the opinions of Drs. Andersen and Brandling-Bennett.

B. Objective evidence

Second, the ALJ found the opinions of Drs. Andersen and Brandling-Bennett were inconsistent with the objective evidence, specifically, treatment notes from early 2017 wherein Plaintiff sought follow-up treatment for her diabetes. AR 17 (citing AR 656). An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Defendant does not address this argument, *see* Dkt. 11, and the Court finds the record does not support the alleged inconsistencies.

Here, the ALJ referred to treatment notes from 2017 wherein Plaintiff was seen for an endocrinology appointment "primarily focused on glycemic control." AR 17 (citing AR 656), 657. During this visit, Plaintiff's provider noted Plaintiff was pleasant, cooperative, and in no apparent distress with normal affect. AR 656. However, the significance of this evidence is unclear. The treatment note was prepared by a doctor who was consulted for Plaintiff's diabetes, and does not reference Plaintiff's mental impairments. *See* AR 655-57. The provider did not conduct a psychological evaluation or any psychological tests. *See* AR 655-67. Therefore, this evidence shows nothing more than a physician was consulted for Plaintiff's diabetes, and not for her mental impairments. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (lack of references to mental impairments in reports prepared by doctors who were consulted for other reasons "is not probative of anything except the fact that these physicians were consulted for other matters."); *Diedrich v. Berryhill,* 874 F.3d 634, 641 (9th Cir. 2017 (holding it was not proper to reject the plaintiff's testimony because her orthopedist did not note her mental health symptoms in an orthopedic evaluation). The Court concludes this is not a specific and legitimate

reason supported by substantial evidence to discount the opinions of Drs. Andersen and Brandling-Bennett.

### C. Plaintiff's testimony

The ALJ also assigned little weight to the opinions of Drs. Andersen and Brandling-Bennett because the opinions are inconsistent with Plaintiff's testimony she could work with others, and she was seeking disability based on her physical condition. AR 17.

An ALJ may also properly reject a physician's opinion which is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602–03 (9th Cir. 1999) (a medical report's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion).

The ALJ cited to evidence wherein Plaintiff testified she was able to work with others because she is "a sweet person." AR 17, 49. Dr. Andersen opined Plaintiff is markedly limited in her ability to interact consistently with others in the workplace. AR 507. However, Plaintiff's testimony is not necessarily inconsistent with Dr. Andersen's findings when viewed in the context of Dr. Andersen's entire opinion. Dr. Andersen also opined Plaintiff's "insight into her mental health problems is nonexistent[,]" AR 507, which indicates Plaintiff's self-assessment may not be entirely accurate and she may not understand her interactions with co-workers or the extent of her mental impairments. Thus, Plaintiff's statement about her being "a sweet person" is not inconsistent with the conclusions made by Dr. Andersen. Therefore, based on the overall record, the Court concludes this is not a specific and legitimate reason to assign little weight to the opinion of Dr. Andersen.

Dr. Brandling-Bennett opined Plaintiff's neurocognitive impairments are disabling, and her memory is impaired, but made no specific findings regarding Plaintiff's social functioning or ability to interact or communicate with others. *See* AR 658-661. Thus, Plaintiff's testimony she is able to work with others is not inconsistent with Dr. Brandling-Bennett's opinion, and this is not a specific and legitimate reason supported by substantial evidence to discount Dr. Brandling-Bennett's opinion.

The ALJ also noted Plaintiff testified she was seeking disability based on her physical impairments at the hearing. AR 17. The ALJ does not cite to a specific portion of the hearing where Plaintiff testified she was seeking disability benefits because of her physical conditions, and the Court is not aware of such testimony. *See* AR 17, 28-57. The only testimony related to Plaintiff's mental impairments is her statement she is not taking depression medication. AR 46. In in her disability application, Plaintiff reported she was unable to work due to depression *and* her physical impairments related to diabetes, blindness, kidney disease, and high blood pressure. AR 250.[2] Thus, it is not clear why or how Plaintiff's hearing testimony is inconsistent with the opinions of Drs. Andersen and Brandling-Bennett, or necessarily incompatible with disability. Therefore, this is not a specific and legitimate reason supported by substantial evidence for giving little weight to the opinions of Drs. Andersen and Brandling-Bennett.

---

[2] Defendant argues in Plaintiff's examination with Dr. Andersen, when asked what has led to her applying for disability, Plaintiff stated "[b]ecause of my physical, because I'm diabetic, maybe some mental, well not mental, just dealing with what I have to deal with." Dkt. 11 at 3 (citing AR 503). However, the ALJ's decision specifically refers to Plaintiff's hearing testimony and does not reference any purported inconsistency in her reports to Dr. Andersen. AR 17. According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196). Because the ALJ did not refer to this evidence in his decision, Defendant's argument is unavailing.

D. Plaintiff's work history

Lastly, the ALJ assigned little weight to the opinions of Drs. Andersen and Brandling-Bennett because the record did not show Plaintiff had significant "social or cognitive limitations for any continuous or expected 12-month period" as Plaintiff had worked at the substantial gainful activity ("SGA") level as recently as the first quarter of 2015 and only stopped working because her temporary job ended. AR 17. At step one, the ALJ found Plaintiff engaged in SGA from January 2015 to March 2015, and Plaintiff worked after that time, but her earnings did not rise to SGA levels. AR 16.

At the first step of the sequential evaluation, the ALJ assesses whether the claimant is engaging in SGA. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaging in SGA, she is not disabled. *Id.*; *see also* 42 U.S.C. § 423(d)(1)(A). Part-time work can constitute SGA if the work results in average earnings in excess of SGA amounts. *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 292 (9th Cir. 1992). By contrast, when determining the most work a claimant can perform, the SSA generally assesses whether the claimant can perform an eight-hour workday, five days per week, or an equivalent work schedule. *See* SSR 96-8p, 1996 WL 374184, at *1 (an RFC is an assessment of a claimant's ability to do work-related activities eight-hours a day, five days per week, or an equivalent work schedule); *see also* SSR 83-10, 1983 WL 31251, at *5-6 (1983) (defining work exertional levels in terms of an eight-hour workday).

Hence, SSA guidance and relevant case law recognize a distinction between SGA activity which precludes benefits and potential SGA based on a claimant's RFC. *Compare* 20 C.F.R. § 404.1520(a)(4)(i) *with* SSR 96-8p, 1996 WL 374184, at *1; *see also Martinez v. Berryhill*, 721, Fed.Appx. 597, 601 (9th Cir. 2017) (noting even if a claimant could "work a few hours per day, punctuated by frequent rest breaks," this "abbreviated work schedule would not constitute the

ability to engage in substantial gainful activity"); *Ratto v. Sec'y of Health and Human Servs.*, 839 F. Supp. 1415, 1430-31 (D. Or. 1993) (collecting cases on the eight-hour workday standard and observing the "distinction between present substantial gainful activity and potential substantial gainful activity").

Here, the ALJ found Plaintiff performed work above SGA levels in the first quarter of 2015. AR 16. The ALJ then found Plaintiff's ability to perform work above SGA levels contradicted the opinions of Drs. Andersen and Brandling-Bennett who found Plaintiff cannot sustain full-time employment. AR 17. However, the fact Plaintiff worked full-time for three months in 2015 at the SGA level does not show she could work full-time on a sustained basis. The record reflects Plaintiff's full-time work in 2015 only lasted three months. AR 541-546. The ALJ must inquire whether the claimant has "residual functional capacity for work activity *on a regular and continuing basis.*" 20 C.F.R. §§ 404.1545 & 416.945 (emphasis added). "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester,* 81 F.3d at 833; *See also Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001).

Moreover, at the hearing, Plaintiff testified she worked for All Stars, a temporary staffing agency, where she worked adjusting meat for a meat production company for three months in 2016. AR 40-41. Plaintiff testified her job duties were limited. For example, Plaintiff testified she had been shown various jobs, and then her employer "saw that [she] was very limited[,]" and put her in "one section of the place because [she] was unable to do the other things in the other sections because of [her] coordination and slowness …" AR 42, 43, 55. Plaintiff also testified the temporary agencies she worked for did not know the extent of her limitations, she was sent on jobs she could not perform, and sometimes she was sent back to the agency after one day because she was not able to keep up. AR 49. Therefore, this limited time and scope of work,

which was clearly below the SGA level in 2016, is not a specific and legitimate reason supported by substantial evidence for assigning little weight to the opinions of Drs. Andersen and Brandling-Bennett.

The ALJ also assigned little weight to the opinions of Drs. Andersen and Brandling-Bennett as inconsistent with Plaintiff's testimony she stopped working because her temporary job ended. AR 17; *see* AR 45. *See Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 601–02 (9th Cir. 1999) (The ALJ may reject a medical opinion which is inconsistent with other evidence of record, such as a claimant's activities.).

Defendant argues because the ALJ found Plaintiff's testimony her job ended for reasons other than her impairments, the ALJ's finding was not in error. Dkt. 11 at 3 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009)). In *Valentine*, the Ninth Circuit held the ALJ properly rejected a treating physician by identifying a contradiction in that the physician "repeatedly reported [the claimant] was unemployable while acknowledging he continued to work full time," and pointed to additional evidence in the record consistent with that contradiction — the same treating physician's treatment notes showing the claimant had "improved functioning at work." 574 F.3d at 692–93.

However, no contradiction to the extent found in *Valentine* exists here when the opinions of Drs. Andersen and Brandling-Bennett are viewed in their entirety. As discussed above, Dr. Andersen opined Plaintiff's "insight into her mental health problems is nonexistent[,]" and she has a history of paranoid delusional thoughts, AR 507, and Dr. Brandling-Bennett found Plaintiff has significant neurocognitive impairments, AR 660. In the context of a work environment, Plaintiff reported to Dr. Andersen people have been monitoring her and distributed tapes, but no one admits to it, and as a result, she has not been able to stay at a job since 2007. AR 507.

Plaintiff reported she does not talk to other people about this because they will think she is crazy, but she knows these things are really happening. AR 507. Thus, when viewing the record as a whole, the evidence indicates Plaintiff may not be able to engage in an accurate self-assessment about her work history or understand the reasons she has been unable to continue working. Moreover, in contrast to *Valentine*, Defendant has failed to direct the court to other additional evidence consistent with the alleged contradiction. Dkt. 11 at 3-4. Accordingly, the Court cannot find the ALJ's decision is supported by substantial evidence. The ALJ's finding Plaintiff's testimony regarding her work history is inconsistent with the opinions of Drs. Andersen and Brandling-Bennett is not supported by substantial evidence.

In light of the foregoing discussion, none of the reasons offered by the ALJ to reject the opinions of Drs. Andersen and Brandling-Bennett opinion are specific and legitimate or supported by substantial evidence. Therefore, the ALJ erred by failing to find Plaintiff's mental impairments severe at Step Two.

E. <u>Harmless error</u>

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Furthermore, "the fact that the administrative law judge, had [he] considered the entire record, might have reached the same

result does not prove that [his] failure to consider the evidence was harmless. Had [he] considered it carefully, [he] might well have reached a different conclusion." *Hollingsworth v. Colvin*, 2013 WL 3328609, *4 (W.D. Wash. July 1, 2013) (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ did not include or discuss the functional limitations related to Plaintiff's mental impairments in determining Plaintiff's RFC. AR 19. Had the ALJ properly considered Plaintiff's mental impairments at Step Two and all of Drs. Andersen and Brandling-Bennett's opined limitations, the ALJ may have found Plaintiff disabled or included additional limitations in the RFC. *See* AR 507, 660 (Drs. Andersen and Brandling-Bennett opined Plaintiff is unable to maintain full-time employment.). As the ALJ's failure to properly consider Plaintiff's mental impairments at Step Two and throughout the remaining sequential evaluation process affects the ultimate disability decision, the error is not harmless.

**II. Whether the ALJ properly assessed the remaining medical opinion evidence and erred by failing to properly consider Plaintiff's RFC and the findings at steps four and five.**

Plaintiff maintains the ALJ failed to properly consider the opinion of Dr. Brockenbrough and the new evidence submitted to the Appeals Council further undermines the ALJ's decision. Dkt. 10 at 8-13. Plaintiff also contends the ALJ erred in assessing her RFC and finding her not disabled at Step 5 of the sequential evaluation process. Dkt. 10.

The ALJ's error at Step Two with respect to Plaintiff's mental impairments requires remand to the Commissioner for proper consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in the administrative process incorporating Plaintiff's mental impairments and the work limitations possibly caused by additional severe impairments.

As the ALJ's error at Step Two impacts all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process. Thus, it is unnecessary to address the other issues raised in Plaintiff's appeal.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings[3] in accordance with the findings contained herein.

The Clerk is directed to enter judgment for the Plaintiff and close the case.

Dated this 5th day of October, 2018.

David W. Christel
United States Magistrate Judge

---

[3] Plaintiff only argues the case should be remanded for further administrative proceedings. Dkt. 10 at 16. Therefore, the Court will not consider whether the case should be remanded for an award of benefits.